2012 OK 80

**Sonny Lauren HARMON, Plaintiff–Appellant,**

v.

**Paul CRADDUCK, Glynn Booher, and Alice Turner, Defendants–Appellees.**

No. 106,269.

Supreme Court of Oklahoma.

Sept. 18, 2012.

---

Sonny Lauren Harmon, Pro Se.[1]

1. Debra K. Hampton filed her Entry of Appearance as "co-counsel of record" on January 12, 2010, after the briefing cycle had been completed.

Ronald Anderson, Assistant General Counsel, Oklahoma Department of Corrections, Oklahoma City, Oklahoma.

GURICH, J.

### Facts and Procedural History

#### Harmon I

¶ 1 Sonny Lauren Harmon is an inmate incarcerated with the Oklahoma Department of Corrections. Between October 3, 2003, and December 6, 2004, Harmon was housed at the John Lilley Correctional Center. In November of 2004, Harmon was moved to the segregation housing unit at JLCC prior to his scheduled transfer to another facility. JLCC staff conducted a routine inventory of Harmon's property in connection with this status change. Some of his personal effects, including a gold ring with stones, a gold watch, and miscellaneous personal items,[2] were deemed contraband under DOC policy and were confiscated by JLCC officers. Defendant Paul Cradduck stored the items in the JLCC property room, placing the ring in his desk where it was left unsecured. Sometime later Harmon's gold ring was either lost or stolen.[3] The remaining personal property was either returned to Harmon, disposed of under DOC contraband policy, or is not at issue in this case.

¶ 2 On December 8, 2004, Harmon began efforts filed a grievance "Request to Staff" with Warden Booher, seeking a return of the seized property through the required administrative channels. When Harmon's attempts to resolve his dispute through the informal resolution process failed, he presented a grievance to Warden Booher on January 5, 2005. However, on January 28, 2005, the Warden rejected Harmon's grievance his claim on procedural grounds. Warden Booher's response provided Harmon with inconsistent directions, informing him (a) that the grievance was being returned unanswered for failure to comply with DOC procedure; and (b) that he had fifteen (15) days to present an appeal of the decision to the DOC director.[4] Following his appeal, the DOC director informed Harmon that his review proceeding was premature based on the Warden's decision to return the grievance unanswered. Harmon attempted to seek clarification of DOC's determination and was advised to resubmit his grievance with Warden Booher. Harmon once again presented the grievance to Warden Booher; however, it was rejected for failure to correct the original submission within ten days of the January 28th response.

¶ 3 On August 10, 2005, Harmon filed suit against DOC, the JLCC facility, and Warden Booher for the loss of his ring, watch, and other miscellaneous property items. His petition alleged certain personal effects had been wrongfully detained by prison officials. Although Harmon alleged the seizure of his property was a violation of the Oklahoma and United States Constitutions, his petition merely requested a return of the items or compensation for their value.

¶ 4 The defendants sought a stay of the lawsuit to conduct an internal investigation of the accusations and to prepare a report addressing the substance of Harmon's claims.[5] The trial judge sustained the motion, and DOC filed its special report on April 18, 2006. According to the report and attached materials, Officer R. Shepard confiscated several items from Harmon in November 2004. The

---

2. The property identified by Harmon included a surge protector, extension cable, headphones, long-john top, German–English dictionary, game set, soft drinks, pictures, and a laundry bag.

3. Harmon alleges Cradduck intentionally converted the ring for his own personal gain. Cradduck maintains the ring was stolen by an unknown individual/individuals and denies personal involvement in the theft.

4. According to DOC OP 090124(V)(A)(7), when a grievance is returned unanswered, it must be resubmitted within ten (10) days. The procedure for appealing a decision made by the facility's reviewing authority is set forth in OP 090124(VII); it provides that an appeal must be presented within fifteen (15) days of receipt of the reviewing authority's response.

5. Title 57 O.S.Supp.2004 § 566.4(K) authorizes the trial judge to stay court proceedings so an investigation may be conducted by DOC officials to review the substance of an inmate lawsuit. The statute requires DOC to present its findings in a "special report," detailing the facts behind the lawsuit and what, if any, action should be taken to resolve the matter.

report included an affidavit from Cradduck in which he conceded that the gold ring had been deposited in an unsecured desk and stolen from the JLCC property room by an "unknown person or persons." A DOC disciplinary letter dated January 27, 2005, was also attached to the report. It indicated that DOC had reprimanded Cradduck for violating agency policy in mishandling Harmon's ring. Booher's written admonishment also referenced prior disciplinary actions against Cradduck, including two incidents involving lost inmate property.

¶ 5 DOC and Booher filed a motion simultaneously with the report, requesting an order dismissing Harmon's suit for failure to state a claim, or in the alternative, an order awarding summary judgment. DOC maintained that Harmon had failed to exhaust his administrative remedies and had neglected to provide notice under the Oklahoma Governmental Tort Claims Act.[6] The trial judge sustained the motion and entered a judgment in favor of the defendants on May 24, 2006.

¶ 6 Harmon appealed the judgment and the matter was assigned to COCA, Division IV. In an unpublished opinion, Harmon I,[7] COCA reversed the district court in part and remanded the matter to allow Harmon an opportunity to amend his original petition. COCA reasoned that a trier of fact, based on documentation uncovered during DOC's internal investigation, could "conclude that a JLCC property room officer intentionally diverted [Harmon's] property ... in light of the officer's prior disciplinary record" and/or "appropriated [Harmon's] ring for himself." Harmon I, at 19–20. COCA held that Harmon had exhausted his administrative remedies because he "substantially complied with the procedure set forth in OP–090124," and dismissal based on this affirmative defense was error. Harmon I, at 12, 15. Finally,

COCA held that dismissal of the tort claims was appropriate because the record did not reflect Harmon's compliance with the notice provisions of the GTCA.[8] Harmon I, at 15. COCA remanded the case, giving Harmon an opportunity to amend his petition to cure any pleading deficiencies, establish compliance with the GTCA notice provisions, and to articulate the viability of any claims predicated on § 1983. Harmon I, at 20. Neither party sought certiorari, and mandate was issued on July 19, 2007.

### Harmon II

¶ 7 On remand,[9] Harmon filed an amended petition on December 17, 2007, naming Cradduck, Booher, and Turner as defendants, "in their individual capacity to impose personal liability." [10] DOC was not renamed as a defendant. The second petition alleged that Cradduck converted Harmon's wedding ring for his own personal use under state tort law. It also claimed that Cradduck's wrongful act had deprived him of personal property and violated his civil rights under 42 U.S.C. § 1983. The petition included a new contention, suggesting Booher and Turner engaged in fraud to coverup Cradduck's theft of the ring. This concealment, according to Harmon, required application of equitable tolling for purposes of the limitations periods under the GTCA. Following service on each defendant, DOC counsel sought another stay of proceedings to obtain a supplemental investigative report.

¶ 8 On July 11, 2008, counsel for DOC filed a motion seeking dismissal or summary judgment, with a second special report attached on behalf of all three employees. DOC's supplemental report was very similar to the first. The report acknowledged the loss of Harmon's ring; however, it included a

---

6. 51 O.S.2001 § 151 et seq.

7. Harmon v. Booher, Case No. 103,481 (June 20, 2007) (unpublished).

8. The court also noted that the claims might be barred under 51 O.S.Supp.2004 § 155(24) from injuries arising out of the "operation or maintenance" of correctional facilities. Harmon I, at 15.

9. Harmon also attempted to remove his own state court action to federal court under 28 U.S.C. § 1446. See Harmon v. Cradduck, Case No. CIV–07–1072–C, 2007 WL 4246004 (W.D.Okla. Nov. 29, 2007). Applying the abstention doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the federal court case was dismissed on November 27, 2007.

10. Alice Turner was employed by DOC as Warden Booher's assistant.

new affidavit wherein Cradduck specifically denied misappropriating the ring. The supplemental report also contained a recent letter of reprimand, detailing additional disciplinary action taken against Cradduck on July 7, 2008, for the disappearance of Harmon's watch.[11] Harmon filed an objection to the motion to dismiss; however, on August 15, 2008, the trial court once again entered judgment in favor of the defendants on all counts.[12]

¶9 Harmon appealed, and the case was assigned to COCA, Division I. COCA affirmed the trial court, with one judge dissenting.[13] Harmon timely petitioned this Court for certiorari, arguing that the decision from COCA directly conflicted with findings made in the first appeal and that summary judgment was improperly based on disputed material facts in the record. No responsive pleading was filed on behalf of the defendants. This Court granted certiorari and allowed each party to submit supplemental briefs. Harmon filed a Supplemental Brief and Request for Oral Argument; however, no brief was tendered by Appellees.[14]

### Standard of Review

■■■ ¶10 An order sustaining summary judgment in favor of a litigant presents solely a legal matter. *Feightner v. Bank of Oklahoma, N.A.*, 2003 OK 20, ¶2, 65 P.3d 624, 626 (quoting *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051, 1053); *see also Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir.2006) (applying de novo standard to review summary judgment in 42 U.S.C. § 1983 action). Questions of law mandate application of the

de novo standard of review, which affords this Court with plenary, independent, and non-deferential authority to examine the issues presented. *Martin v. Aramark Servs., Inc.*, 2004 OK 38, ¶4, 92 P.3d 96, 97.

■■■ ¶11 Examination of an order sustaining summary judgment requires Oklahoma courts to determine whether the record reveals disputed material facts or whether reasonable minds could draw different conclusions from undisputed facts. *Cranford v. Bartlett*, 2001 OK 47, ¶3, 25 P.3d 918, 920. All facts and inferences must be viewed in a light most favorable to the party opposing summary adjudication. *Estate of Crowell v. Bd. of Cnty. Comm'rs of Cnty. of Cleveland*, 2010 OK 5, ¶22, 237 P.3d 134, 142 (citing *Manley v. Brown*, 1999 OK 79, ¶22, 989 P.2d 448, 455). If the essential fact issues are in dispute, or reasonable minds might reach different conclusions in light of the inferences drawn from undisputed facts, summary judgment should be denied. *Schovanec v. Archdiocese of Oklahoma City*, 2008 OK 70, ¶39, 188 P.3d 158, 172.

### Analysis

***The settled-law-of-the-case doctrine does not allow for reconsideration of Harmon's compliance with the administrative exhaustion requirements.***

■■■ ¶12 As a preliminary matter, we must address whether COCA committed error in Harmon II by affirming the trial court's finding that Harmon failed to exhaust his administrative remedies. Under the set-

11. Supplemental Report of Review of Factual Basis of Claims Asserted in Prisoner Petition, attachment 12 (July 11, 2008). Harmon's amended petition did not raise a conversion claim for any alleged misappropriation of the watch.

12. DOC's motion was identified as both a motion to dismiss under 12 O.S.2001 § 2012(B)(6) and a motion for summary judgment. The district court's Journal Entry of Judgment found that Harmon had failed to state a claim upon which relief could be granted, and sustained summary judgment. In Harmon II COCA reviewed the lower court's ruling under the summary judgment standards. Because the trial judge weighed material outside of the pleadings, we are evaluating this appeal as one granting sum-

mary judgment. *State ex rel., Wright v. Oklahoma Corp. Comm'n*, 2007 OK 73, ¶48, 170 P.3d 1024, 1039.

13. Judge Hansen dissented to that portion of Harmon II which awarded summary judgment to Cradduck on Harmon's conversion claim, explaining "I agree with the Harmon I Court that DOC's special report presents evidence from which the trier of fact could find [Cradduck] acted outside the scope of his employment in appropriating [Harmon's] ring for himself without authorization." Harmon II, at 2 (Hansen, J., dissenting).

14. Harmon's request for oral argument is denied. Okla. Sup. Ct. R. 1.9.

tled-law-of-the-case doctrine, all issues decided in an earlier appeal, either expressly or impliedly, are firmly established and may not be reconsidered in any subsequent stage of the proceedings.[15] *Bierman v. Aramark Refreshment Servs., Inc.,* 2008 OK 29, ¶¶ 11–12, 198 P.3d 877, 881. A second tribunal is bound to pay deference to legal findings rendered in a prior appellate decision. *Worsham v. Nix,* 2006 OK 67, ¶ 27, 145 P.3d 1055, 1064.

¶ 13 COCA in Harmon I held that the requirements of administrative exhaustion had been satisfied.[16] However, despite COCA's pronouncement in Harmon I, the trial court once again ruled that Harmon had failed to exhaust his administrative remedies necessary to assert claims against the defendants.[17] Because neither party sought certiorari, the issue of exhaustion as it pertained to the loss of Harmon's ring, could not be challenged a second time.

### Summary judgment was improperly granted in favor of defendant Cradduck on Harmon's conversion claim.

¶ 14 The next question presented is whether COCA erred in affirming summary judgment on Harmon's conversion claim against Cradduck. Harmon contends that evidence revealed via DOC's internal investigation supports his theory regarding Cradduck's alleged conversion of the ring. We agree and find that materials attached to the reports presented in connection with DOC's investigation, when viewed in a light most favorable to Harmon, create a sufficient dispute of material facts to mandate reversal of the order granting summary judgment.

¶ 15 Conversion has been defined as the unauthorized assumption and exercise of dominion over personal property of another person which is inconsistent with the rights of the owner. *Welty v. Martinaire of Okla., Inc.,* 1994 OK 10, ¶ 6, 867 P.2d 1273, 1275. There is no dispute that Harmon's gold ring was stolen and that the theft was without consent.[18] Therefore, the only three elements of Harmon's conversion claim at issue are (1) whether Harmon was the owner of the gold ring with stones; (2) whether Cradduck intentionally diverted the ring for his own personal benefit; and (3) if the former two elements are established, the amount of damages suffered by Harmon.

¶ 16 A number of details provided in the DOC investigative documents lend support for Harmon's contention he was the owner of the gold ring seized by prison officials. Both of the agency's motions for summary judgment and accompanying reports acknowledged that on December 6, 2004, Harmon had possession of a gold ring with stones.[19] Harmon has consistently maintained his ownership of the gold ring in question. Photographs and other documents in the record also indicate that in 1999 Harmon had previously possessed a gold ring matching the description of the same one seized by JLCC officers in 2004. DOC con-

15. We have recognized exceptions to the application of this doctrine in cases where the prior decision is palpably erroneous or when failing to reverse the initial determination would result in a gross or manifest injustice. *Dean v. Multiple Injury Trust Fund,* 2006 OK 78, ¶ 7, 145 P.3d 1097, 1100.

16. "Accordingly, we find [Harmon] exhausted DOC's administrative remedies. The trial court's determination otherwise was in error, as was its dismissal of [Harmon's] claim on this ground." Harmon I, at 15.

17. In Harmon II, COCA declined to give any deference to its predecessor in Harmon I under the settled-law-of-the-case doctrine. Although the amended petition named new parties, the principles of res judicata bind not only parties to the prior proceedings, but also their privies. *North Side State Bank v. Board of County Comm'rs Tulsa Cnty.,* 1994 OK 34, ¶ 10, 894 P.2d 1046, 1050 (citing *Cartwright v. Atlas Chemical Indus., Inc.,* 1981 OK 4, ¶ 14, 623 P.2d 606, 611–12). COCA's ruling in Harmon I on the issue of exhaustion was definitive. Because the same facts formed the basis of both the original petition and the amended petition, and the newly named parties were not strangers to the original action, summary judgment based on failure to comply with the exhaustion prerequisites was error.

18. July 11, 2008 Supplemental Report, Attachment 16, affidavit of Paul Cradduck.

19. In the July 11, 2008 Motion to Dismiss/Motion for Summary Judgment, Statement of Undisputed Material Facts, number 8A, acknowledges seizing a "gold ring w/ stones" as contraband on December 6, 2004.

tested Harmon's ownership, asserting that he did not have possession of a gold ring with stones when he arrived at JLCC in October of 2003. For purposes of summary judgment, there was sufficient evidence to create a factual dispute on the issue of ownership of the gold ring with stones. *See Brown v. Okla. State Bank & Trust Co. of Vinita*, 1993 OK 117, ¶¶ 8–9, 860 P.2d 230, 233 (concluding affidavit of plaintiff asserting ownership of funds created fact question requiring denial of motion seeking summary judgment).

¶ 17 The record also reflects a factual dispute on the issue of whether Cradduck intentionally diverted Harmon's ring for his own personal use. The defendants have not challenged the salient facts surrounding confiscation of Harmon's gold ring or its subsequent disappearance from the JLCC secure property area. Cradduck has denied involvement in the ring's theft. However, Cradduck was disciplined in connection with the loss of the ring. The record reflects that on at least four occasions Cradduck was reprimanded for failing to follow DOC regulations governing the proper handling of inmate property. In each instance, Cradduck's transgressions resulted in the loss of inmate property and disciplinary action. A jury could reasonably conclude, based on this pattern, that Cradduck had been diverting inmate property for his own use. Although he denied misappropriating the ring, Cradduck's self-serving affidavit alone does not eliminate the existence of a factual dispute on the issue. *See Okla. Dept. of Sec. ex rel. Faught v. Wilcox*, 2011 OK 82 ¶ 20, 267 P.3d 106, 111; *Poafpybitty v. Skelly Oil Co.*, 1973 OK 110, ¶ 17, 517 P.2d 432, 438 (finding that an affiant's interest in the outcome of a suit is enough to require the testing of his or her credibility before the trier of fact).

 ¶ 18 To the extent Cradduck asserts DOC policy as a defense to the conversion claim, this too is controverted. Strict adherence to DOC policies regulating the handling

and disposal of contraband might afford a defense to Harmon's claim of conversion. *See First Bank of Okarche v. Lepak*, 1998 OK 46, ¶ 14, 961 P.2d 194, 198; *see also Hawkins v. Montana State Prison*, 2004 MT 289, ¶ 22, 323 Mont. 326, 102 P.3d 2, 5 (holding prison officials entitled to raise prison policy defense in conversion action stemming from seizure of contraband). However, DOC policies may not be invoked to shield an officer from liability if that officer has failed to abide by the particular terms and conditions set forth in those rules. Consequently, compliance with DOC policy outlining the seizure and handling of inmate contraband in this case, is a question which should be left to the trier of fact.

 ¶ 19 Cradduck's repeated disciplinary history for displaced inmate property, the admitted loss of the gold ring with stones, and Cradduck's undisputed access to the ring, provide sufficient evidence to create discord over essential elements of Harmon's conversion claim. Accordingly, the order awarding summary judgment in favor of Cradduck on Harmon's conversion claim is reversed, and the cause is remanded for further proceedings.[20]

### The trial court properly rejected Harmon's claim under 42 U.S.C. § 1983.

¶ 20 Harmon next challenges COCA's affirmation of summary judgment for his claims under 42 U.S.C. § 1983. The amended petition filed by Harmon alleged that Cradduck violated his civil rights as a result of the "the illegal acts in taking my personal effects without just compensation." Amended Petition, at 6. Harmon argues his property was taken by Cradduck without due process of law in violation of the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Second, Harmon suggests that defendants Booher and Turner engaged in a fraudulent scheme to conceal information from Harmon during the griev-

---

**20.** The GTCA generally precludes the naming of individual state employees for tort claims arising in the scope of their employment. *Martin v. Johnson*, 1998 OK 127, ¶ 28, 975 P.2d 889, 895. However, any malicious or bad faith act by an employee falls outside the scope of employment for purposes of the GTCA. *Nail v. City of Henryet-*

*ta*, 1996 OK 12, ¶ 7, 911 P.2d 914, 916 (citing *Parker v. City of Midwest City*, 1993 OK 29, 850 P.2d 1065). Because Cradduck's alleged theft of the ring would have been an act outside the scope of employment, the resulting tort claim would not be governed by the GTCA, and would not be subject to the notice provisions of the act.

ance process "designed to deceive and defeat Plaintiff's constitutional rights to recover his property." [21] We conclude that neither theory supports recovery under § 1983.[22]

■■■ ¶ 21 To establish a valid cause of action under Section 1983, a plaintiff must demonstrate (1) a person has acted under color of law, (2) to deprive another of rights secured by federal law or the Constitution. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).[23] Because Harmon's property was confiscated by JLCC officers according to DOC prison policy, the taking of such items occurred under color of state law. *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Therefore, our inquiry is limited to whether the record presents a factual dispute on the question of Harmon's alleged deprivation of rights secured by the Constitution.

■■■ ¶ 22 Harmon's § 1983 claim is centered on what he perceives as an unconstitutional deprivation of property. More particularly, Harmon argues his ring was taken by Cradduck without due process of law in violation of the Fourth, Fifth and Fourteenth Amendments. A section 1983 action based on property deprivation requires a plaintiff to show he or she had a constitutionally protected interest in that property as defined by state law. *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). To the extent a prisoner is afforded a right to possess certain personal belongings, depri-

vation of that property only raises constitutional concerns if due process is overlooked. *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

■■ ¶ 23 The fundamental concern in a due process analysis is the opportunity to be heard at a meaningful time and in a meaningful manner. *Parratt,* 451 U.S. at 540, 101 S.Ct. 1908 (citing *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). The United States Supreme Court has determined that postdeprivation remedies made available by state tort law may satisfy due process requirements:

> Although the state [tort] remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process.

*Parratt,* 451 U.S. at 544, 101 S.Ct. 1908. The Supreme Court took this a step further when it found that the unauthorized intentional taking and/or destruction of inmate property does not support an action under § 1983 when state law provides an adequate postdeprivational remedy. *Hudson v. Palmer,* 468

---

**21.** Amended Petition, at 2. Although Harmon does not specifically refer to § 1983 in support of his cause against Booher and Turner, we have liberally construed the amended petition in accordance with the rule announced in *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

**22.** The trial court disposed of Harmon's § 1983 claims on several grounds, including immunity under the United States Constitution. Concluding the defendants had been sued in their official capacities, the lower court reasoned that the action was the equivalent of one brought against the state. Oklahoma has not waived sovereign immunity, and consequently such a proceeding would be barred by the Eleventh Amendment. *See Will v. Michigan Dept. Of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Yet, Harmon's amended petition clearly

designated the defendants "in their individual capacity to impose personal liability." Amended Petition, at p. 1. Although we find the record does not support a § 1983 case against the defendants, the trial court's justification for reaching this result was flawed. *Kentucky v. Graham,* 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Colvin v. McDougall,* 62 F.3d 1316, 1317 (11th Cir.1995) (holding that in evaluating personal/individual versus official capacity for purposes of a § 1983 lawsuit, courts must look to the complaint and the course of proceedings).

**23.** Section 1983 does not create any substantive rights, but instead provides injured parties with a remedy for the deprivation of rights established elsewhere. *McLin v. Trimble,* 1990 OK 74, ¶ 25, 795 P.2d 1035, 1042 (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

U.S. 517, 536, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

¶24 In *Wilhelm v. Gray*, we weighed a litigants § 1983 claim in light of *Parratt* and *Hudson*, and we concluded that under federal law, a § 1983 action may not be maintained for a constitutional deprivation if adequate and meaningful state grounds for redress exist. *Wilhelm v. Gray*, 1988 OK 142, ¶ 11, 766 P.2d 1357, 1359. In the present case, Harmon has a meaningful state remedy available; he may pursue his alleged property loss claim in a state law conversion case against the officer he suggests is responsible.

¶25 To the extent Harmon's § 1983 claim is founded on the allegedly deceptive conduct of Booher and Turner during the grievance process, we similarly find such an accusation does not present a constitutional issue. An alleged violation of prison grievance policies, created by operation of state law, will not support a cognizable claim under § 1983. *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir.2002) (holding that because § 1983 requires a plaintiff to prove she/he was deprived of a right under federal law, violation of a state statute or prison regulations will not suffice); *see also Murray v. Albany County Bd. of County Comm'rs*, 211 F.3d 1278, 2000 WL 472842 (10th Cir. April 20, 2000).

¶26 Even liberally construing Harmon's amended petition and the record before this Court, we find no evidence of a constitutional violation. Harmon has an adequate postdeprivation remedy through a state court action against Cradduck for recovery of the loss of his gold ring with stones. The conduct of Booher and Turner does not support a cognizable claim under § 1983. It was, therefore, proper to award summary judgment for any claims based on 42 U.S.C. § 1983.

*Any tort claims raised by Harmon against appellees, other than the conversion claim against Cradduck, were properly dismissed.*

24. 51 O.S.Supp.2003 § 156 requires a claimant to submit notice of any claim against the State of Oklahoma by sending it in writing to the Office

¶27 The amended petition filed by Harmon, when liberally construed, raised additional claims based on allegedly tortious conduct of the defendants. The petition also requested application of equitable tolling to allow additional time to satisfy the notice provisions under the GTCA.[24]

¶28 Notice is a jurisdictional prerequisite to bringing an action under the GTCA. *Shanbour v. Hollingsworth*, 1996 OK 67, ¶ 7, 918 P.2d 73, 75. Failure to present written notice as required by the GTCA results in a permanent bar of any action derivative of the tort claim. 51 O.S.Supp.2003, 156(B). Harmon admittedly has never given notice under the GTCA. This Court will not consider such an argument when *Harmon has never attempted to serve notice under the Act.* Any additional tort claims Harmon may raise, other than for conversion against Cradduck, are prohibited under the GTCA statute of limitations.

### Conclusion

¶29 Accordingly, we vacate the COCA opinion and remand the matter to the trial court to finally resolve this enduring litigation. The sole surviving claim after is Harmon's claim predicated on Cradduck's alleged conversion of the gold wedding ring with stones. The trial court properly granted judgment and disposed of all other claims. On remand, the trial court is directed to enter an appropriate scheduling order so the case may be presented on its merits.

**THE COURT OF CIVIL APPEALS OPINION IS VACATED; THE TRIAL COURT'S ORDER GRANTING SUMMARY JUDGMENT ON HARMON'S CONVERSION CLAIM AGAINST DEFENDANT CRADDUCK IS REVERSED; TRIAL COURT'S ORDER AWARDING SUMMARY JUDGMENT ON APPELLANT'S REMAINING CLAIMS IS AFFIRMED; CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH TODAY'S PRONOUNCEMENT**

of Risk Management Administrator within one (1) year of the loss.

¶ 30 TAYLOR, C.J., COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, COMBS, GURICH, JJ.–Concur.

¶ 31 REIF, J.–Disqualified