GRAHAM v. CARRINGTON PLACE PROPERTY OWNERS ASSOCIATION



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:GRAHAM v. CARRINGTON PLACE PROPERTY OWNERS ASSOCIATION

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 GRAHAM v. CARRINGTON PLACE PROPERTY OWNERS ASSOCIATION
2019 OK CIV APP 33
Case Number: 116968
Decided: 09/25/2018
Mandate Issued: 06/26/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 33, __ P.3d __

 

DUSTIN B. GRAHAM and COURTNEY J. GRAHAM, husband and wife, Plaintiffs/Appellants,
v.
CARRINGTON PLACE PROPERTY OWNERS ASSOCIATION, INC., a domestic not-for-profit corporation, and THE CITY OF NORMAN, a political subdivision of the State of Oklahoma, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA

HONORABLE LORI M. WALKLEY, TRIAL JUDGE

REVERSED AND REMANDED WITH INSTRUCTIONS

John M. Dunn, THE LAW OFFICES OF JOHN M. DUNN, PLLC, Tulsa, Oklahoma, for Plaintiffs/Appellants

Blake Sonne, SONNE LAW FIRM, PLC, Norman, Oklahoma, for Defendant/Appellee Carrington Place Property Owners Association, Inc.

Rickey J. Knighton II, Jeanne M. Snider, Kristina L. Bell, ASSISTANT CITY ATTORNEYS, CITY OF NORMAN, Norman, Oklahoma, for Defendant/Appellee City of Norman

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Dustin and Courtney Graham appeal from the trial court's order granting summary judgment in favor of Defendants in this declaratory judgment action. In August 2014, Mr. Graham entered a guilty plea to several felony counts in the District Court of Oklahoma County. He was thereafter incarcerated in the custody of the Oklahoma Department of Corrections (DOC) until his release in May 2016.

¶2 While Mr. Graham was incarcerated, Ms. Graham purchased real property in Norman, Oklahoma located within 2,000 feet of a park established and operated by Defendant Carrington Place Property Owners Association, Inc., a homeowners' association. Mr. Graham is listed as a joint tenant on the deed, along with Ms. Graham and one other individual, and the deed is dated October 29, 2015. The property was purchased with the intention that Mr. Graham would move there to live with his wife, Ms. Graham, immediately following his release from custody.

¶3 The Grahams state they were aware Mr. Graham's criminal offenses would require him to register as a sex offender pursuant to the Sex Offenders Registration Act, 57 O.S. Supp. 2012 §§ 581--590.2 (SORA), and that Mr. Graham would be unable to live within 2,000 feet of a statutorily restricted area following his release from incarceration. However, at the time of Mr. Graham's conviction, SORA did not set forth any residential restriction pertaining to parks controlled by a homeowners' association. That is, at the time of Mr. Graham's conviction, as well as at the time of the purchase of the property and execution of the deed, SORA provided, in pertinent part, as follows:

It is unlawful for any person registered pursuant to [SORA] to reside, either temporarily or permanently, within a two-thousand-foot radius of . . . a playground or park that is established, operated or supported in whole or in part by city, county, state, federal or tribal government . . . .

57 O.S. Supp. 2012 § 590(A). Effective November 1, 2015, however, this provision was amended as follows:

It is unlawful for any person registered pursuant to [SORA] to reside, either temporarily or permanently, within a two-thousand-foot radius of . . . a playground or park that is established, operated or supported in whole or in part by a homeowners' association or a city, town, county, state, federal or tribal government . . . .

57 O.S. Supp. 2015 § 590(A) (emphasis added).

¶4 The Grahams argue the version of SORA in effect at the time of Mr. Graham's conviction should apply. Indeed, it is undisputed they were in compliance with this version of SORA because the park that is located near their property was not established and is not operated or supported in whole or in part by a city, county, state, federal or tribal government. However, the Grahams acknowledge Mr. Graham would stand in violation of the version of SORA in effect at the time of his release and registration -- i.e., the version of § 590 that went into effect on November 1, 2015, during his incarceration -- because the property is located within 2,000 feet of a park established, operated or supported by a homeowners' association.

¶5 Around the time of Mr. Graham's release from custody in May 2016, he executed an Oklahoma Sex Offender Registration Form on June 9, 2016.[1] Mr. Graham also submitted a Sex Offender Registration Form to the Norman Police Department, executed on May 23, 2016, as a result of his intention of moving to the Norman property upon his release from custody.

¶6 Based on the undisputed facts, the trial court awarded summary judgment in favor of Defendants, who argued that the version of § 590 in effect at the time of Mr. Graham's release from custody should apply. The trial court agreed and stated that, in line with the Oklahoma Supreme Court's analysis in Starkey v. Oklahoma Department of Corrections, 2013 OK 43, 305 P.3d 1004, the version of SORA "which is applicable to a defendant is the version in effect at the time a defendant becomes subject to the act." The order states that "some offenders may become subject to the act upon conviction, [but] the statute as well as the ruling in Starkey make it clear that this is not always the case." The trial court concluded in its order that Mr. Graham did not become subject to SORA until his release and registration as a sex offender and, therefore, the applicable version of SORA is the version in effect at the time of his release -- i.e., the version that prohibits Mr. Graham from residing within 2,000 feet of a playground or park that is established, operated or supported in whole or in part by a homeowners' association.

¶7 The trial court also determined that application of the version in effect at the time of Mr. Graham's release from custody did not constitute an ex post facto violation. The trial court stated, among other things, that the version in effect at the time of Mr. Graham's release does not

expose [Mr. Graham] to a greater punishment . . . . The undisputed facts of this case indicate that [Mr. Graham] never resided at the residence in question, that the residence was purchased while [he] was incarcerated and therefore that he is not being expelled from his residence as a result of the amendment which occurred two days after the property was purchased. He retains the same property interest in the residence that he had at the time that the new statute went into effect.

From this order, the Grahams appeal.

STANDARD OF REVIEW

¶8 "This appeal stems from a grant of summary judgment, which calls for de novo review." Woods v. Mercedes-Benz of Okla. City, 2014 OK 68, ¶ 4, 336 P.3d 457 (citation omitted). Under the de novo standard, this Court is afforded "plenary, independent, and non-deferential authority to examine the issues presented." Harmon v. Cradduck, 2012 OK 80, ¶ 10, 286 P.3d 643 (citation omitted). Summary judgment is appropriate "[i]f it appears to the court that there is no substantial controversy as to the material facts and that one of the parties is entitled to judgment as a matter of law[.]" Okla. Dist. Ct. R. 13(e), 12 O.S. Supp. 2013, ch. 2, app.

ANALYSIS

I. If it is the legislative intent that the residential restrictions found in § 590 of SORA are to be applied prospectively, then, pursuant to Cerniglia v. Oklahoma Department of Corrections, the applicable version of SORA is that which was in effect at the time of Mr. Graham's conviction.

¶9 In Starkey v. Oklahoma Department of Corrections, 2013 OK 43, 305 P.3d 1004, the plaintiff "pled nolo contendere and received a deferred adjudication on October 12, 1998, to a charge of sexual assault upon a minor child in the District Court of Calhoun County, Texas." Id. ¶ 1. The plaintiff then moved to Oklahoma later that same year. The Starkey Court explained that, in 2007, the Oklahoma Legislature "created a system to assign sex offenders a level of 1 to 3 based upon their risk." Id. ¶ 28 (footnote omitted). The plaintiff in Starkey, despite having received his sentence almost ten years prior to these 2007 amendments, was subsequently assigned by the DOC "a level 3 life-time registration classification with no opportunity for a hearing." Id. ¶ 8. The Starkey Court explained that, based on the specific language used by the Legislature in the 2007 amendments -- i.e., the 2007 amendments to § 582.1 and § 582.2 of SORA -- the amendments were not intended to apply retroactively and, thus, could only apply prospectively. The Starkey Court further explained that, regarding those portions of SORA intended by the Legislature to apply prospectively, the law that applies to individuals who are convicted in another jurisdiction and who subsequently move to Oklahoma is that which is in effect when such individuals voluntarily move to this state. The Court explained that because the plaintiff moved to Oklahoma in 1998, the 2007 amendments did not apply to him.[2]

¶10 The Starkey Court did not conclude that all provisions of SORA were intended by the Legislature to apply prospectively. In fact, the Starkey Court next examined a certain 2004 amendment to § 583, and concluded "the 2004 amendment to § 583 was intended to apply retroactively." Id. ¶ 34. However, the Starkey Court, after a detailed analysis, concluded the 2004 amendment, if applied retroactively, would constitute an ex post facto violation.

¶11 Soon after Starkey was decided, the Oklahoma Supreme Court issued Cerniglia v. Oklahoma Department of Corrections, 2013 OK 81, 349 P.3d 542. In Cerniglia, the Oklahoma Supreme Court explained as follows:

The lesson to be found in Starkey is that the applicable version of SORA is the one in effect when a person becomes subject to its provisions. A person convicted in another jurisdiction is not subject to SORA until they enter Oklahoma with the intent to be in the state. Whereas, a person like Cerniglia, who was convicted in Oklahoma, became subject to SORA when she was convicted. This is true even though she was incarcerated. . . . [A]t the time of Cerniglia's conviction and as a consequence of that conviction SORA obligated her to register in the future upon her release. Therefore, she became subject to SORA upon her . . . conviction and the provisions of SORA in effect at that time are controlling even though she did not have to begin registration until she was released.

Cerniglia, ¶ 6 (citation omitted).

¶12 In the present case, Mr. Graham was convicted (i.e., entered a guilty plea) in August 2014. Regardless of the fact that he was subsequently incarcerated, pursuant to Cerniglia Mr. Graham became subject to SORA upon his conviction, "and the provisions of SORA in effect at that time are controlling[.]" Id. Consequently, assuming the legislative intent is -- like the legislative intent in the 2007 amendments to § 582.1 and § 582.2 of SORA analyzed in Starkey -- for § 590 to apply prospectively, then, pursuant to Cerniglia, the version of § 590 in effect at the time of Mr. Graham's conviction controls. Accordingly, because it is undisputed Mr. Graham was in compliance with the version of § 590 in effect at the time of his conviction, summary judgment must be awarded to the Grahams.

II. If it is the legislative intent that the residential restrictions in § 590 of SORA are to be applied retroactively, then, because retroactive application would violate the ex post facto clause of the Oklahoma Constitution, the version of § 590 in effect at the time of Mr. Graham's conviction still applies.

¶13 Even if the legislative intent is for § 590 to apply retroactively, we would reach the same result as above. The Starkey Court explained that "[a]mendments enacted which increase[] the duties and obligations of a sex offender, including increasing the registration period, are substantive amendments and not merely procedural remedial amendments." Starkey, ¶ 20 (footnote omitted). Substantive amendments apply prospectively unless "the purposes and intention of the Legislature to give a statute a retrospective effect are expressly declared or are necessarily implied from the language used." Id. ¶ 21 (citation omitted).

¶14 Section 590, which limits where a sex offender may reside and which, in some instances, requires the relocation of an offender, is a substantive law and not merely a "remedial or procedural [one] which [does] not create, enlarge, diminish, or destroy vested rights[.]" State v. Shade, 2017 OK CIV APP 68, ¶ 8, 407 P.3d 790 (citation omitted). Thus, § 590, which does not expressly declare an intention that it apply retroactively or prospectively, is presumed to apply prospectively "unless the purposes and intention of the Legislature to give [it] a retrospective effect . . . [are] necessarily implied from the language used." Starkey, ¶ 24 (citation omitted). Indeed, the Oklahoma Supreme Court has stated that "the presumption against retroactivity should not be followed in complete disregard of factors that may give a clue to the legislative intent. Only if we were to fail in detecting legislative intent after looking at all the available indicia, would the presumption of prospectivity operate." Id. ¶ 22 (citation omitted). Thus, even where retroactive intent is not expressly stated, if "no other construction can be fairly given," and if "the intention of the Legislature cannot be otherwise satisfied," then such implicit retroactive intent will be upheld so long as it is not unconstitutional to do so. Id. ¶ 25 (citations omitted).

¶15 Although we need not definitively determine whether it is the legislative intent that § 590 be applied retroactively, it is clear that § 590 addresses itself to all individuals registered under SORA. For example, all versions of § 590 begin as follows: "It is unlawful for any person registered pursuant to [SORA] to reside, either temporarily or permanently, within a two-thousand-foot radius" of the various locations listed. Thus, the version of § 590 in effect at the time of Mr. Graham's release and registration states it applies to "any person registered pursuant to [SORA]," indicating an intent for retroactive application. Furthermore, the 2015 version contains language which appears to be intended to function as at least a partial protection against some of the harsh consequences that may occur as a result of retroactive application. For example, 57 O.S. Supp. 2015 § 590(A) provides that the "[e]stablishment of a day care center or park in the vicinity of the residence of a registered sex offender will not require the relocation of the sex offender or the sale of the property," and "[n]othing in this provision shall require any person to sell or otherwise dispose of any real estate or home acquired or owned prior to the conviction of the person as a sex offender."

¶16 However, even assuming the legislative intent is for § 590 to apply retroactively, the Starkey Court explicitly discussed § 590 in its analysis and application of the Oklahoma Constitution's ex post facto clause.[3] Although the Starkey Court was, as indicated above, specifically concerned with whether retroactive application of the 2004 amendment to § 583 -- a section which contains SORA's registration provisions -- would violate Oklahoma's ex post facto clause, the Starkey Court examined SORA in its entirety for punitive effects. The Starkey Court stated as follows:

In addition to the "in person" registration and verification requirements, offenders in Oklahoma, among other things, have restrictions placed on where they can live and with whom they can live. An offender may not reside, either temporarily or permanently, within a two-thousand-foot radius of any public or private school, educational institution, property or campsite whose primary purpose is working with children, a playground or park operated or supported in whole or part by public funds, or a licensed child care center. This restriction is made regardless of whether the original victim was a child or an adult. It is also unlawful for an offender to reside with minor children if their original victim was a minor child. A violation is a felony punishable by one to three years in prison. . . .

Starkey, ¶ 50 (emphasis added) (footnotes omitted). The Starkey Court then stated that "SORA's residency restrictions are similar to the traditional punishment of banishment." Id. ¶ 60.

¶17 Moreover, the Starkey Court discussed with approval a determination of the Supreme Court of Kentucky:

[T]he Supreme Court of Kentucky determined a similar residency restriction was "regarded in our history and traditions as punishment." The court found the restriction expels registrants from their homes even if they resided there prior to the statute's enactment. The Oklahoma version of SORA is even more restrictive than the Kentucky law because the restrictive distance is twice as large as Kentucky's one-thousand-foot distance.

Starkey, ¶ 60 (emphasis added).

¶18 The Starkey Court stated that "SORA promotes deterrence through the threat of negative consequences, for example, eviction, living restrictions, and humiliation," id. ¶ 63, and, for these reasons, concluded retroactive application of SORA's registration provisions would constitute a violation of the Oklahoma Constitution's ex post facto clause.[4] See also Bollin v. Jones ex rel. State ex rel. Okla. Dep't of Corr., 2013 OK 72, ¶ 15, 349 P.3d 537 (The Starkey Court "held SORA and its numerous amendments when viewed in their entirety, have a punitive effect that outweighs their non-punitive purpose and therefore a retroactive application of SORA's registration provisions would violate the ex post facto clause in the Oklahoma Constitution." (footnote omitted)).

¶19 Although the Starkey Court was concerned with the retroactive application of SORA's registration provisions, pursuant to the analysis in Starkey and, in particular, the portions of the Starkey Opinion quoted above, we conclude a retroactive application of § 590 would also violate Oklahoma's ex post facto clause.[5] To conclude otherwise would be inconsistent with the Oklahoma Supreme Court's analysis in Starkey. Therefore, even if a retroactive intent is necessarily implied in § 590, we conclude § 590 must be applied prospectively and, thus, the version in effect at the time of Mr. Graham's conviction applies. Therefore, summary judgment must be awarded in favor of the Grahams.

CONCLUSION

¶20 Having concluded the version of § 590 in effect at the time of Mr. Graham's conviction, and not the version in effect at the time of his release, applies to the circumstances of this case, summary judgment must be awarded to the Grahams.[6] We reverse the trial court's order and remand this case to the trial court with instructions to enter a new order consistent with this Opinion.

¶21 REVERSED AND REMANDED WITH INSTRUCTIONS.

RAPP, J., and GOODMAN, J., concur.

FOOTNOTES

[1] A copy of the form signed by Mr. Graham is in the appellate record -- it sets forth the version of SORA in effect at the time of his registration. Thus, among other things, this form notified Mr. Graham that it would be unlawful for him to reside within 2,000 feet of a "park that is established, operated or supported in whole or in part by a homeowners' association[.]" (Emphasis in original.)

[2] The Starkey Court also stated that, regardless, retroactive application would "violate[] the ex post facto clause of the Oklahoma Constitution." Id. ¶ 28 (footnote omitted).

[3] The Oklahoma Constitution provides, in pertinent part, as follows: "No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. No conviction shall work a corruption of blood or forfeiture of estate: Provided, that this provision shall not prohibit the imposition of pecuniary penalties." Okla. Const. art. 2, § 15.

[4] In its response and counter motion for summary judgment, Defendant Carrington Place Property Owners Association, Inc., discusses at length a decision of the United States Court of Appeals for the Tenth Circuit -- Shaw v. Patton, 823 F.3d 556 (10th Cir. 2016) -- in support of its assertion that retroactive application of § 590 would not constitute a violation of the ex post facto clause. However, the Shaw Court clearly stated that, in Starkey, "the Oklahoma Supreme Court evaluated the statute's constitutionality under the Oklahoma Constitution, not the U.S. Constitution." 823 F.3d at 563. Indeed, in Starkey, the Oklahoma Supreme Court explained as follows:

Although Oklahoma's ex post facto clause is nearly identical to the Federal Constitution's provisions we are not limited in our interpretation of Oklahoma's constitution. How we apply the "intent-effects" test [i.e., a test applied to determine whether retroactive application of a law violates the ex post facto prohibition] is not governed by how the federal courts have independently applied the same test under the United States Constitution as long as our interpretation is at least as protective as the federal interpretation. This Court has previously held:

The people of this state are governed by the Oklahoma Constitution, and when it grants a right or provides a principle of law or procedure beyond the protections supplied by the federal constitution, it is the final authority. This is so even if the state constitutional provision is similar to the federal constitution. The United States Constitution provides a floor of constitutional rights -- state constitutions provide the ceiling.

2013 OK 43, ¶ 45 (footnotes omitted). Thus, the holding in Shaw -- i.e., that retroactive application of the residential restrictions is not a violation of the ex post facto clause of the U.S. Constitution -- is neither controlling nor persuasive, concerned, as we are here, with the Oklahoma Constitution's ex post facto clause.

[5] But see Fry v. State ex rel. Dep't of Corr., 2017 OK 77, ¶ 5, 404 P.3d 38 ("The Starkey case did not purport to prohibit the retroactive effect of every provision in [SORA]."). In Fry, the Supreme Court concluded that a certain "override remedy provided by 582.5(D), did not add or increase sanctions and requirements of registration. In fact, it did just the opposite." Fry, ¶ 5. Thus, the Fry Court concluded retroactive application of this override remedy in § 582.5 was permissible. However, because § 590, as discussed at length in Starkey, does add or increase sanctions or requirements of registration, it cannot be applied retroactively.

[6] Having reached this determination, we deny the Grahams' motion for leave to submit an appellate brief. In addition, we need not address the Grahams' request, as set forth in their petition, that Defendants "be restrained and enjoined from taking any actions . . . to prevent [Mr. Graham] from residing at the Property . . . ." Such a request is rendered moot by our determination.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2017 OK CIV APP 68, 407 P.3d 790, STATE v. SHADE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2012 OK 80, 286 P.3d 643, HARMON v. CRADDUCK
Discussed
 2013 OK 43, 305 P.3d 1004, STARKEY v. OKLAHOMA DEPARTMENT OF CORRECTIONS
Discussed at Length
 2013 OK 72, 349 P.3d 537, BOLLIN v. JONES
Discussed
 2013 OK 81, 349 P.3d 542, CERNIGLIA v. OKLAHOMA DEPT. OF CORRECTIONS
Discussed
 2014 OK 68, 336 P.3d 457, WOOD v. MERCEDES-BENZ OF OKLAHOMA CITY
Discussed
 2017 OK 77, 404 P.3d 38, FRY v. STATE ex rel. DEPARTMENT OF CORRECTIONS
Discussed
Title 57. Prisons and Reformatories
 Cite
Name
Level

 57 O.S. 590, Unlawful for Registered Sex Offender to Reside Within 2,000 Feet of School, Playground, Park, Licensed Child Care Facility, and Other Locations
Discussed at Length
 57 O.S. 581, Short Title
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA