**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EMCASCO INSURANCE COMPANY;
EMPLOYERS MUTUAL CASUALTY
COMPANY,

     Plaintiffs Counter Defendants -
     Appellees,

v.

CE DESIGN, LTD, an Illinois corporation,

     Defendant Counter Plaintiff -
     Appellant,

and

CUSTOM MECHANICAL EQUIPMENT,
INC.; CUSTOM MECHANICAL
EQUIPMENT OF WISCONSIN;
CUSTOM EQUIPMENT, LLC,

     Defendants.

No. 14-6064

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 5:11-CV-01494-M)**
_____

Jeffrey A. Berman, Anderson + Wanca, Rolling Meadows, Illinois; (David M. Oppenheim, Anderson + Wanca, Rolling Meadows, Illinois, Phillip A. Bock, Bock & Hatch, LLC, Chicago, Illinois, and Michael E. Grant, Musser, Kouri, Bentwood & Grant, Oklahoma City, Oklahoma, with him on the briefs), for Defendant Counter Plaintiff-Appellant CE Design Ltd.

Brian A. O'Gallagher, Cremer, Spina, Shaughnessy, Jansen & Siegert, LLC, Chicago, Illinois (Kristina M. Beck, Cremer, Spina, Shaughnessy, Jansen & Siegert, LLC, Chicago, Illinois, and Christopher D. Wolek, Gibbs, Armstrong, Borochoff, Mullican, & Hart, Tulsa, Oklahoma, with him on the briefs), for Plaintiff Counter Defendants-Appellees Emcasco Insurance Company and Employers Mutual Casualty Company.

_____

Before **TYMKOVICH**, **GORSUCH**, and **PHILLIPS**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

This case started with a junk fax. In April 2008, Custom Mechanical Equipment, Inc. (Custom), an Oklahoma company, faxed an advertisement to CE Design in Illinois. Unlike most junk fax recipients, who simply dispose of these faxes, CE Design sued Custom under federal and state law. CE Design brought a class action suit of people and businesses that had also received unsolicited faxes from Custom. After Custom's insurer, Emcasco Insurance Company (Emcasco), declined to defend, Custom settled with CE Design for a considerable sum. In settling, CE Design agreed not to enforce the judgment against Custom but to proceed directly against Emcasco.

After Emcasco refused to pay the judgment, CE Design and Emcasco filed rival declaratory judgment suits in separate federal courts (CE Design in Oklahoma, and Emcasco in Illinois). Ultimately, the federal district court in Illinois transferred its case to the federal district court in Oklahoma. Based on the insurance policy's terms, the district court held that Emcasco had no duty to defend Custom or to pay the judgment. CE Design appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

- 2 -

## I. BACKGROUND

### A. The Insurance Policies

CE Design is an Illinois corporation. Custom is an Oklahoma corporation with its principal place of business in Oklahoma.[1] In September 2007, Custom purchased a one-year commercial-insurance policy from Emcasco.[2] The policy provides two forms of insurance: Commercial General Liability (CGL) coverage, and Commercial Umbrella Liability (UL) coverage. Both the CGL and UL forms have two sections: Coverage A, which provides insurance for bodily injury and property damage; and Coverage B, which provides insurance for personal and advertising injury.

#### 1. Coverage A

Insurance under Coverage A applies to property damage only if it is caused by an "occurrence." Appellant's App. vol. I at 174, vol. II at 278. The policy defines "occurrence" as "an accident,[3] including continuous or repeated exposure to substantially the same general harmful conditions." Appellant's App. vol. I at 187, vol. II at 293. It also defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of that property," and "[l]oss of use of tangible property that is not

---

[1] Two other corporations are associated with Custom: Custom Mechanical Equipment of Wisconsin and Custom Mechanical Equipment, LLC.

[2] Custom had purchased a similar policy the year before, but it does not apply to the present controversy.

[3] Because the policy equates "occurrence" with "accident," this opinion uses the two terms interchangeably.

physically injured." Appellant's App. vol. I at 187–88, vol. II at 294. Summarizing its range of coverage, the policy provides that Emcasco will "pay those sums that the insured [Custom] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Appellant's App. vol. I at 174; vol. II at 278. Similarly, the policy disclaims any "duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply." Appellant's App. vol. I at 174; vol. II at 278.

In addition, the policy lists several exclusions to coverage for property damage, two of which are at issue in this appeal. The first, an expected-or-intended-injury exclusion, provides that the insurance "does not apply to . . . 'property damage' expected or intended from the standpoint of the insured. . . ." Appellant's App. vol. I at 175; vol. II at 279. The second, a statutory-violation exclusion, is titled, "EXCLUSION—VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION," and reads as follows:

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"[P]roperty damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(a) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(b) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(c) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating, or distribution of material or information.

Appellant's App. vol. I at 189, vol. II at 296.

### 2. *Coverage B*

Under Coverage B, Emcasco agreed that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." Appellant's App. vol. I at 178; vol. II at 282. Although the definition of "personal and advertising injury" lists seven separate qualifying injuries, this appeal concerns just one of them:

> "Personal and advertising injury" means injury . . . arising out of one or more of the following offenses: . . .

> (e) Oral or written publication, in any manner, of material that violates a person's right of privacy[.]

Appellant's App. vol. I at 187-88; vol. II at 293-94.

Coverage B lists fifteen separate exclusions, one of which is at issue on appeal—a knowing-violation exclusion, which provides that the insurance does not apply to:

> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

Appellant's App. vol. I at 179.

In addition, Emcasco amended Coverage B to provide the same statutory-violation exclusion as applies to Coverage A:

This insurance does not apply to:

- 5 -

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"[P]roperty damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(a) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(b) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(c) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating, or distribution of material or information.

Appellant's App. vol. I at 189, vol. II at 296.

B. CE Design's Lawsuit Against Custom

In April 2008, Custom faxed an unsolicited advertisement for screening enclosures to CE Design and then, or about then, sent the same or a similar fax to at least 2,551 others. CE Design contends that this unsolicited fax damaged it by costing it time, paper, and ink toner. Seeking redress, CE Design sued Custom in Illinois state court and sought to certify a class of others that had also received the fax or a similar fax from Custom.

In its complaint, CE Design pleaded three claims for relief. First, CE Design alleged that Custom's fax violated the Telephone Consumer Protection Act (TCPA), which provides $500 in damages for each TCPA violation. 47 U.S.C. § 227(b)(3). In support of this claim, CE Design specifically alleged that:

[Custom] knew or should have known that [CE Design] and the other class members had not given express invitation or permission for [Custom] or anybody else to fax advertisements about [Custom's] goods or services, that [CE Design] and the other class members did not have an established

- 6 -

> business relationship with [Custom], that [the advertisements Custom sent] were advertisements . . . .

Appellant's App. vol. I at 102.

Second, CE Design alleged common-law conversion based on Custom's faxes using the recipients' paper, toner, and fax machines, and it sought property damages for those losses. Similar to how it pleaded its TCPA count, CE Design alleged that "[Custom] knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization." Appellant's App. vol. I at 105. Third, CE Design alleged that Custom's fax violated the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. 505/2.

After CE Design served the complaint, Custom tendered its defense to Emcasco. In response, Emcasco denied coverage and declined to defend Custom. In June 2011, with the case so positioned, Custom and CE Design settled CE Design's lawsuit. The two parties agreed to request that the Illinois state court enter judgment against Custom for $1,276,000 (the TCPA's $500 per violation multiplied by 2,552 unsolicited faxes). *See* 47 U.S.C. § 227(b)(3). As part of the settlement, CE Design agreed to enforce the judgment only against Emcasco.[4] Custom settled because "[it did] not have significant assets other than insurance, and any judgment that is executed against [it] would likely force [it] into

---

[4] The settlement stated that Custom "will assign to the Class . . . to the full extent permitted by law, all of [Custom's] claims against and rights to payments from insurers, including [Emcasco], under any and all insurance policies issued by [Emcasco]. . . ." Appellant's App. vol. II at 344.

bankruptcy. . . ." Appellant's App. vol. II at 364. In its notice of the proposed settlement to the class members, CE Design recommended settling for the agreed sum, stating that a prevailing plaintiff could recover $500 for each TCPA violation proved. CE Design also informed the class members that "[Custom's] insurance policies are the only meaningful source of recovery." Appellant's App. vol. II at 364.

In September 2011, the Illinois trial court approved the settlement agreement and entered judgment. In disposing of the case, the trial court adopted the parties' proposed language, including these terms:

- The damages amount agreed to is what a reasonably prudent person in [Custom's] position would have settled for on the merits of the claims in this Litigation;

- 2,552 unsolicited faxed advertisements were sent on [Custom's] behalf to 2,552 persons between February 1, 2008 and April 30, 2008;

- [Custom] believed that [it] had the consent of the fax recipients when [it] sent the faxes;[5]

- [Custom] did not intend to injure the fax recipients;

- [Custom] tendered this lawsuit to [Emcasco] and [Emcasco] refused to defend or indemnify this matter.

Appellant's App. vol. II at 474. The trial court entered "judgment on Counts I, II and III [the TCPA, conversion, and ICFA claims, respectively] . . . against [Custom], jointly and

---

[5] As mentioned, CE Design's complaint alleged that Custom "knew or should have known" that Custom sent an unsolicited fax to CE Design and others, and that Custom "knew or should have known" that its fax would convert CE Design's property. Appellant's App. vol. I at 102, 105. With CE Design's about-face in the settlement, it positioned itself better to assert that Custom's fax was an accident.

- 8 -

severally, in the total amount of $1,276,000," with Custom's policy with Emcasco as the sole source of recovery. Appellant's App. vol. II at 476.

C. The Current Lawsuit

Almost immediately after agreeing to settle with Custom, CE Design sued Emcasco in the United States District Court for the Western District of Oklahoma, seeking a declaratory judgment that Emcasco's insurance policy legally obligated it to pay CE Design's judgment. In turn, Emcasco sued CE Design in the United States District Court for the Northern District of Illinois, seeking a declaratory judgment that it was not liable for the judgment. Upon CE Design's motion, the United States District Court for the Northern District of Illinois transferred Emcasco's case to the United States District Court for the Western District of Oklahoma.

In June 2013, both parties moved for summary judgment. Emcasco argued that it had properly denied coverage and refused to defend because Custom's fax was neither an "occurrence" that caused property damage nor a "personal and advertising injury." Alternatively, Emcasco contended that three policy exclusions barred coverage—the statutory-violation exclusion (Coverages A and B), the expected-or-intended-injury exclusion (Coverage A), and the knowing-violation exclusion (Coverage B).

In response, CE Design argued that Custom's policy covered CE Design's claims against Custom under the "property damage" and "personal and advertising injury" clauses and that no exclusion applied. CE Design also argued that the statutory-violation exclusion did not apply to CE Design's conversion and ICFA claims, but instead applied

solely to the TCPA claim. CE Design further argued that Emcasco's failure to defend Custom estopped it from asserting any defenses to indemnity.

After hearing arguments, the district court granted Emcasco's summary judgment motion and denied CE Design's motion. With the parties' agreement, the district court applied Oklahoma law to interpret the insurance policies. After doing so, the district court concluded that Emcasco had no duty to defend Custom against CE Design's three claims.

Addressing the TCPA claim, the district court concluded that the statutory-violation exclusion relieved Emcasco of any duty to defend that claim. For the conversion claim, the district court observed that Oklahoma's law of conversion requires an intentional diversion for one's own personal benefit. *See Harmon v. Cradduck*, 286 P.3d 643, 649 (Okla. 2012). Applying the policy to exclude coverage for an insured's intentional acts, the district court concluded that the expected-or-intended-injury exclusion defeated any duty for Emcasco to defend the conversion claim.[6] Finally, the district court decided that Emcasco had excluded coverage for the ICFA claim because, to prevail under that claim, a defendant must intend for a plaintiff to rely on a deceptive act or unfair practice.[7] *See Dubey v. Pub. Storage, Inc.*, 918 N.E.2d 265, 277 (Ill. App. Ct. 2009). For these reasons,

---

[6] Contrary to the district court's view, we conclude that the policy excludes coverage not for intentional *acts* (such as intentionally sending the faxes) but for non-accidental *property damage*.

[7] Emcasco argues that, in addition to the statutory-violation exclusion, either the knowing-violation exclusion or the expected-or-intended-injury exclusion eliminated any possible duty to defend the ICFA claim. The district court did not identify what exclusions it applied.

the district court granted Emcasco's summary judgment motion. CE Design timely appealed.

## II. DISCUSSION

### A. <u>Standard of Review</u>

We review de novo a district court's grant of summary judgment, applying the same legal standard as applies in the district court. *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1131 (10th Cir. 2014). "We must view the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Bohn v. Park City Grp., Inc.*, 94 F.3d 1457, 1460 (10th Cir. 1996). We will uphold the district court's grant of summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

CE Design argues that the district court erred in concluding that Emcasco had no duty to defend Custom against CE Design's three claims. We first analyze this argument by discussing Oklahoma's law governing the interpretation of insurance contracts. Then, in evaluating whether the district court erred, we consider whether either Coverage A or Coverage B of the insurance policy provided Custom coverage against any of CE Design's three claims—and thus activated Emcasco's duty to defend. Finally, we consider whether any of the policy's exclusions apply to defeat coverage.

B. Insurance Contract Interpretation

Just as in the district court, CE Design and Emcasco agree that Oklahoma law applies in interpreting the insurance policy. In Oklahoma, "[a]n insurance policy, like any other contract of adhesion, is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible." *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991). "The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." *Wiley v. Travelers Ins. Co.*, 534 P.2d 1293, 1295 (Okla. 1974).

We construe the terms of the insurance policy in their plain and ordinary sense if they are unambiguous, clear, and consistent. *Dodson*, 812 P.2d at 376. If the insurance policy language is doubtful and susceptible to multiple constructions, then we interpret the policy language most favorably for the insured and against the insurer. *Id.* at 376–77.

C. The TCPA Claim

At oral argument on appeal, CE Design conceded that the statutory-violation exclusion removed Emcasco's duty to defend the TCPA claim. It did so for good reason: the statutory-violation exclusion explicitly excludes from coverage any "property damage" or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate" the TCPA.

Appellant's App. vol. I at 189, vol. II at 296. We agree with the district court that Emcasco had no duty to defend Custom against CE Design's TCPA claim.

### D. The Conversion Claim

#### 1. *Coverage A*

In its state court complaint, CE Design alleged in support of its conversion claim that, by sending unsolicited faxes, Custom "improperly and unlawfully converted their [the class members'] fax machines, toner and paper to its own use" and "permanently misappropriated the class members' fax machines, toner, paper, and employee time to [its] own use." Appellant's App. vol. I at 105. It further alleged that Custom "knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization." Appellant's App. vol. I at 105.

#### a. Intentional Conversion

In Oklahoma, conversion is "the unauthorized assumption and exercise of dominion over personal property of another which is inconsistent with the rights of the owner." *Harmon*, 286 P.3d at 649 (citing *Welty v. Martinaire of Okla., Inc.*, 867 P.2d 1273, 1275 (Okla. 1994)). One element of conversion is that a defendant "intentionally diverted [the property] for his own personal benefit." *Harmon*, 286 P.3d at 649 (emphasis added).

By alleging that Custom "knew" it had wrongfully and without authorization misappropriated the fax recipients' toner and paper for its own personal benefit, CE

- 13 -

Design sufficiently pleaded a claim for conversion. But by proving its allegations, CE Design would be defeating policy coverage. Custom could not know that its misappropriation of the recipients' property was wrongful without also intentionally misappropriating the property. After all, everyone knows that sending a fax results in a receiving fax machine printing the message on paper with toner. *Cf. Equity Ins. Co. v. Garrett*, 178 P.3d 201, 205 (Okla. Civ. App. 2008) (concluding that injuries caused by driving an automobile into a pedestrian, even at a slow speed, "cannot be considered otherwise than 'so natural and probable as to be expected by any reasonable person,' and 'the result . . . so natural and probable as to be expected by any reasonable person,' and 'the result . . . so foreseeable as not to be accidental'") (citation omitted). In such a case, the policy does not provide coverage. And, even if it did, the policy would later exclude it under the expected-or-intended-injury exclusion.

Under Coverage A, as mentioned, the policy applies only if "'property damage' is caused by an 'occurrence.'" Appellant's App. vol. I at 174. The policy defines "occurrence" as an accident. Appellant's App. vol. I at 187. In turn, Oklahoma defines "accident" using a plain language, dictionary meaning: "[a]n event that takes place without one's foresight or expectation; an undersigned, sudden and unexpected event, chance, contingency." *U.S. Fid. & Guar. Co. v. Briscoe*, 239 P.2d 754, 757 (Okla. 1951). Illinois (where the alleged conversion took place) has a similar

- 14 -

definition.[8] *See Viking Const. Mgmt., Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 6 (Ill. App. Ct. 2005) (defining "accident" as "an unforeseen occurrence . . . or an undersigned sudden or unexpected event of an inflictive or unfortunate character"). The problem for CE Design is that, by proving its intentional conversion claim, it would also disprove that an accident caused its property damages. That would leave it with a claim that falls outside Emcasco's duty to defend and the policy's coverage.

### b. Negligent Conversion

Having shown that the policy does not cover intentional conversion, we now turn to CE Design's claim for what it calls "negligent conversion." Although CE Design uses this term, we do not understand it to argue that Oklahoma or Illinois law would recognize a tort for negligent conversion in a real sense of that term—for instance, a traveler mistakenly but honestly grabbing an identical-looking suitcase instead of the

---

[8] The parties agree that Oklahoma law governs the interpretation of the insurance policy. Even so, we are unsure we agree with the district court that Oklahoma's law on conversion governs. Perhaps, because the conversion itself took place in Illinois, its law of conversion—and not Oklahoma's—should apply. In considering this, we recognize that Oklahoma's choice-of-law principles control. *See Boyd Rosene & Assocs. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999) (stating that, for substantive matters, a federal court sitting in diversity should look "to the substantive law of the forum state, including its choice of law principles, to determine the applicable substantive law"). Under Oklahoma's choice-of-law principles, we would apply Illinois's law on conversion if Illinois had the "the most significant relationship to the occurrence and the parties." *See Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974). Because the conversion claim would fail under both Oklahoma and Illinois law, we need not decide which state's conversion law governs.

traveler's own.[9] Nor do we understand CE Design to address that situation. Instead, we understand CE Design to speak to a traditional, intentional conversion committed under a mistaken factual or legal belief of a right to appropriate the property. Appellant's Br. at 20-21, citing *Ins. Corp. of Hanover v. Shelborne Assocs.*, 905 N.E.2d 976, 985 (Ill. App. Ct. 2009) (concluding, at declaratory judgment stage, that "[it] is possible that [the insured] was negligent in believing that the subject fax advertisements were authorized and did not intend to convert the recipients' paper and toner or dispossess them of their fax machine"); *SportChassis, LLC v. Brownard Motorsports of Palm Beach, LLC* 2011 WL 5429404, at *3 (W.D. Okla., Nov. 9, 2011) (unpublished) (concluding that failure to return two cars provided on consignment was conversion despite a mistaken view about the consignment agreement's provisions). We believe that CE Design pleaded this sort of "negligent conversion" by alleging that Custom "should have known" that it had

---

[9] CE Design would have no legal basis to support a mistaken-suitcase theory of negligent conversion. Neither Oklahoma nor Illinois law recognizes such a negligence claim. *See Harmon*, 286 P.3d at 649 (focusing on "whether [the defendant] intentionally diverted [the property] for his own personal benefit"); *Loman v. Freeman*, 890 N.E.2d 446, 462 (Ill. 2008) (stating that "[t]he essence of a claim for conversion is an allegation that the defendant engaged in an *intentional*, wrongful act"); *Craig v. Citicorp Sav.*, 578 N.E.2d 1331, 1336 (Ill. App. Ct. 1991) (concluding that an act "alleged to be a conversion must be positive and tortious but not necessarily wil[l]ful or corrupt; neither negligence nor a breach of contract, though it results in the loss of specific property, constitutes conversion").

misappropriated paper, toner, and CE Design's employee's time.[10] Appellant's App. vol. I at 105.

So we agree with CE Design that a fax-sender could intentionally convert its fax recipients' paper, toner, and use of their fax machines while mistakenly believing that the recipients had expressly permitted and welcomed its faxed advertisement. And we agree with CE Design that, in certain circumstances, such a mistaken belief could qualify as an occurrence (accident) causing property damages under the policy. Further, we agree that if Custom had a supported, though mistaken, belief that its recipients welcomed its faxes, it likely would meet either Oklahoma's or Illinois's definition of accident.

In arguing that Custom's "negligent conversion" qualifies as an accident causing property damages, CE Design relies heavily on this court's decision in *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading*, 442 F.3d 1239 (10th Cir. 2006). Indeed, that case bears many similarities to this one—it involved a class-action TCPA claim; the complaint alleged that the insured fax-sender (Park University) "knew or should have known" that it did not have express permission to fax the advertisements; and Park University claimed that, at most, it accidentally caused the property damage (loss of paper, toner, and use of fax machines) because it believed that the recipient had solicited its fax. We concluded that the insurer owed a duty to defend, because "an

---

[10] Faced with this same "knew or should have known" complaint language in *Park University*, we noted that the occurrence (accident) "could result from *negligent* conduct . . . ." 442 F.3d 1246.

occurrence was possible under the insurance contract. . . ." *Id.* at 1247. Applying Kansas law, we noted that "even if an act itself is intentional, it may result in an unintended injury." *Id.* at 1245 (citing *Spruill Motors, Inc. v. Universal Ins. Co.*, 512 P.2d 325, 327 (Kan. 1973)).

But in *Park University*, we did not hold that any bare claim of a mistake would trigger coverage as an accident. Instead, we evaluated Park University's asserted bases it set forth to show the reasonableness of its belief. *Id.* at 1242–43. In particular, we noted that Park University claimed that its fax to JC Hauling was "not unsolicited because Park University had an existing business relationship with JC Hauling or, in the alternative, it had prior express invitation or permission from JC Hauling to send the fax advertisement." *Id.* at 1242. And this was no unsupported, self-serving conclusion. From the start, Park University had said that it had sent its fax to a named employee of JC Hauling (the fax recipient), who, acting in her employment, had registered for a Park University seminar and supplied JC Hauling's fax number to it. *Id.* at 1242-43.

In determining that this established a sufficient basis for a duty to defend, we distinguished Park University's circumstance from those in other cases where courts found no insurance coverage despite a fax-sender's claim of a belief that it had permission to send its faxes. *Id.* at 1246-47. In this regard, we examined *Resource Bankshares Corp. v. St. Paul Mercury Ins.*, 407 F.3d 631, 638 (4th Cir. 2005), a case in which the insured fax-sender claimed "it only intended to fax ads to recipients who

- 18 -

actually wanted them, and only did otherwise inadvertently." *Park Univ.*, 442 F.3d at 1246-47 (quoting *Res. Bankshares Corp.*, 407 F.3d at 638). We approvingly cited that court's decision against policy coverage, noting that "the plaintiff there failed to present any evidence 'that would cause a reasonable person to mistakenly believe that they had received prior express consent to send their ads . . . .'" *Id.* (citing *Res. Bankshares Corp.*, 407 F.3d at 639). Here, any belief of Custom's that its faxes would be welcomed more resembles the unsupported belief in *Resource Bankshares Corp.* than the "clearly expressed" answer assertions of Park University that "its actions were in fact solicited . . . ."[11] *Park Univ.*, 442 F.3d at 1247.

For this reason, CE Design's claim for coverage must fail. Unlike the insured in *Park University*, CE Design points us to nothing in the record showing that Custom identified to Emcasco any basis for its supposed mistaken belief that even a single one of its 2,552 faxes was authorized. Instead it presents to us a bare claim of

---

[11] We note that CE Design included in its appendix an affidavit from Custom's President, Richard G. Peitz, alleging that it obtained fax numbers from a "Construction Blue Book." Peitz claimed that Custom believed that, by providing contact information to the Blue Book, those individuals and businesses had consented to receiving faxes from Custom. But this affidavit came shortly before the state court entered judgment and accepted the settlement, and nothing in the record shows that Custom presented the affidavit to Emcasco before settling. This is unlike *Park University*, where the insured company clearly asserted in its state-court answer that the recipient solicited the insured's fax. *See* 442 F.3d at 1247. Moreover, we conclude that Peitz's late affidavit and unexplained, blanket assertion is not "evidence that could reasonably be mistaken as express permission to send these faxes." *See Res. Bankshares Corp.*, 407 F.3d at 639.

mistake that any fax-sender can make. We disagree with CE Design that *Park University* would qualify such a deficiently supported "mistake" as an occurrence (accident) causing property damage. If this sufficed as an accident, it is hard to imagine what would not. Accordingly, we conclude that Emcasco had no duty to defend Custom against CE Design's "should have known" conversion claim.

2. *Coverage B*

The policy defines "personal and advertising injury" to include seven general categories of conduct, none of which mentions conversion. Even so, we agree with CE Design that a claim, such as the TCPA, need not be specifically mentioned to qualify—it might qualify under a listed general category such as a privacy violation. That particular category provides coverage for injuries arising out of "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." Appellant's App. vol. I at 187–88, vol. II at 293–94. For instance, in *Park University*, evaluating a claim under the TCPA, we concluded that "[c]ourts have consistently held that the TCPA protects a species of privacy in the sense of seclusion." 442 F.3d at 1249. There we found coverage for a TCPA claim as a "personal or advertising injury." *Id.* We did so recognizing that "[t]he transmission of an allegedly unsolicited fax can constitute a publishing act, while receiving the same can result in an invasion of privacy." *Id*. at 1251.

But this does CE Design little good—it concedes that its TCPA claim is excluded. Thus, CE Design is left to direct us to a case finding that a conversion claim fits

within the privacy coverage. Instead, it gives us lengthy string cites (with no parentheticals) to cases in which courts found a privacy right in TCPA claims.[12] We conclude that conversion claims do not qualify as "personal and advertising injury." Although a TCPA claim proves a "publication" of material with the sending of the fax, *see Park Univ.*, 442 F.3d at 1250, a conversion claim does not—it simply proves a wrongful appropriation of property. Thus, converting another's property does not qualify as a "written publication . . . of material that violates a person's right to privacy." Appellant's App. vol. I at 187–88, vol. II at 293–94. And even if it did, CE Design's claim still would fail under the knowing-violation-of-rights-of-another exclusion. Again, because Custom offered no basis for any mistaken belief that its faxes were expressly permitted or welcomed, we would conclude that it knew its faxes would inflict any covered injuries. Accordingly, we conclude that Emcasco owed no duty to defend under Coverage B.

### E.  The ICFA (Illinois Consumer Fraud Act) Claim

Finally, we consider whether Emcasco had a duty to defend Custom against CE Design's ICFA claim. The district court did not determine whether the policy covered this claim, instead directing its attention to Emcasco's position that three policy exclusions

---

[12] In its brief, Emcasco contends that CE Design has waived this issue because "this position was not asserted (at least not clearly) in this district court. . . ." Appellee's Br. at 21. In its reply brief, CE Design does not contend otherwise. Appellant's Reply Br. at 6-9.

applied: the expected-or-intended-injury exclusion, the knowing-violation exclusion, and the statutory-violation exclusion. Because an ICFA claim requires that a defendant intend for a plaintiff to rely on a deceptive act, the district court concluded that "this intended act would exclude the ICFA claim from coverage." Appellant's App. vol. IV at 985. Although the district court did not then tie this back to the exclusions and say which applied or did not apply, we still have enough in the record to affirm.

We agree with the district court that, to prove its ICFA claim, CE Design would need to prove that Custom *intended* for it and the class members to rely on a deception. *De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009) (stating that one requirement for an ICFA claim is "the defendant's intent that the plaintiff rely on the deception").[13] This proof would necessarily be inconsistent with later saying that the (unidentified) deception caused property damage, implicating possible coverage under Coverage A. Nor has CE Design pointed us to anything in the policy's definition of "personal and advertising injury" that would activate coverage under Coverage B.

Moreover, the intent-to-deceive element would also trigger all three exclusions Emcasco relies upon. The ICFA claim differs from the conversion claim in a material respect: although for conversion a fax-sender may claim to have intentionally faxed an advertisement thinking it was welcome when it was not, a fax-sender for ICFA cannot

---

[13] "A Consumer Fraud Act claim requires (1) a deceptive act or practice by the defendant, (2) *the defendant's intent that the plaintiff rely on the deception*, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *De Bouse*, 922 N.E.2d at 313 (emphasis added).

claim a "mistake" when it faxes an advertisement intentionally meaning to deceive the recipient. For each of these reasons, we conclude that Emcasco had no duty to defend Custom against CE Design's ICFA claim.

F. The Statutory-Violation Exclusion

As an independent basis to defeat all three of CE Design's claims, Emcasco relies on the policy exclusion for "VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION." Appellant's App. vol. I at 189. Specifically, this exclusion provides that "[t]his insurance does not apply to: DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES." Appellant's App. vol. I at 189. Under Coverages A and B, it excludes coverage for "property damage" and "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate:" the Telephone Consumer Protection Act (TCPA), the CAN-SPAM Act, or any other "statute, ordinance or regulation . . . that prohibits or limits the sending, transmitting, communicating or distribution of material or information." Appellant's App. vol. I at 189.

We agree with Emcasco that the statutory-violation exclusion defeats all three of CE Design's claims. Under CE Design's state-court complaint, it alleged that Custom had violated the TCPA by faxing unsolicited advertisements without prior express permission. Accordingly, CE Design alleged that Custom had distributed material in violation of the TCPA. The statutory-violation exclusion denies insurance for

"property damage" and "personal and advertising injury" that arise—even indirectly—out of any act or omission violating the TCPA. Without Custom's having faxed the advertisement to CE Design, neither CE Design's conversion claim nor its ICFA claim would exist. Thus, we hold that any property damage or personal and advertising injury arose directly from Custom's actions in sending the faxed advertisements.

In addition, we find persuasive *G.M. Sign, Inc. v. State Farm Fire and Cas. Co.*, 18 N.E.3d 70, 78–83 (Ill. App. Ct. 2014).[14] In that case, a class of claimants sued an insured party for faxing unsolicited advertisements and pleaded the same three claims under the TCPA, common-law conversion, and the ICFA. *Id.* at 72. Relying on a statutory-violation exclusion identical to Emcasco's, the court held that the exclusion defeated all three claims. *Id.* at 80–81. In our case, CE Design makes some of the same arguments as did its counterparts in *G.M. Sign*. We reject them on the same bases.

---

[14] *See also Am. Cas. Co. of Reading, Pa. v. Superior Pharmacy, LLC*, -- F. Supp. 3d --, 2015 WL 628382, at *6–7 (M.D. Fla. 2015) (concluding that a statutory-violation exclusion removed a conversion claim from coverage because the act violating the TCPA (faxing of an advertisement) was also the act alleged to support plaintiff's conversion claim); *James River Ins. Co. v. Med Waste Mgmt., LLC*, -- F. Supp. 3d --, 2014 WL 4749551, at *6–9 (S.D. Fla. 2014) (same); *G.M. Sign, Inc. v. Auto-Owners Ins. Co.*, 2012 WL 4840592, at *4 (Mich. Ct. App. Oct. 11, 2012) (unpublished) (same). *But see Nationwide Mut. Ins. Co. v. Harris Med. Assocs., LLC*, 973 F. Supp. 2d 1045, 1055–56 (E.D. Mo. 2013) (concluding that the insurance company could not establish sufficient facts at that stage of the case to establish that the statutory violation exclusion removed the plaintiff's conversion claim from coverage).

CE Design contends that the statutory-violation exclusion's language "applies to damages that arise out of a violation of the TCPA." Appellant's Rep. Br. at 9. From this, it argues that "[t]he only damages that arise out of the TCPA are the damages provided for by that statute." *Id.* We understand CE Design to be speaking of monetary damages as opposed to "property damage" or "personal and advertising injury." *See id.* at 9-10 ("Counts II and III of the Complaint in the underlying action seek independent damages from those sought in Count I and would be cognizable even if the TCPA did not exist."). This interpretation mischaracterizes the statutory-violation exclusion's language—it does not speak of "damages" in the monetary sense, it speaks of "property damage," here, the loss of paper, toner, and use of the fax machine.

CE Design also contends that the statutory-violation exclusion's language does not apply because its "conversion and ICFA claims have different elements and arise out of actions separate from the TCPA claim."[15] Appellant's Rep. Br. at 10. Although CE Design agrees that the TCPA claim "shares some of the factual predicates" as the other two claims, CE Design contends that those claims "would be cognizable even if

---

[15] We note that CE Design incorporated the following TCPA allegations into its conversion and ICFA claims: (1) that Custom faxed its recipients unsolicited faxes that it had no invitation or express permission to send; (2) that it sent Custom Design a faxed advertisement and sent the same or similar faxes to the other class members; and (3) that Custom's faxes did not display an opt-out as required by 47 C.F.R. § 64.1200, a regulation implementing the TCPA. *See* 47 U.S.C. § 227. And we also note that CE Design's judgment for $1,276,000 is calculated exclusively under the TCPA: $500 for each of the 2,552 advertisements faxed in violation of the TCPA.

the TCPA did not exist." *Id.* Again, this misses the mark. The statutory-violation exclusion applies not when claims share the same elements,[16] but instead when the property damage (paper, toner, and use of the fax machine) arises out of the same *actions* (the sending of the faxes) violating or allegedly violating the TCPA. *See G.M. Sign*, 18 N.E.3d at 78 ("[W]e disagree that . . . the pertinent analysis requires comparing the elements of the alternative counts to the elements of the TCPA count.").

Next, CE Design contends that its conversion and ICFA claims do not arise out of a TCPA violation. Appellant's Reply Br. at 11. Again, this ignores the exclusion's language, which looks to whether the *property damage* and *personal and advertising injury* "arise directly or indirectly out of any action or omission that violates or is alleged to violate" the TCPA. Appellant's App. vol. I at 189 (emphasis added). CE Design seeks to propel itself through this language by arguing that its conversion claim "does not rely on the TCPA as the source of [CE Design's] right, and seeks separate damages." Appellant's Rep. Br. at 11. In this regard, it notes that some of

---

[16] By requiring the same elements as a TCPA claim, CE Design would limit the statutory exclusion's first paragraph to TCPA claims. That ignores key language in the exclusion—"'[p]roperty damage' arising directly or indirectly out of *any action or omission,* that violates or is alleged to violate[.]" Appellant's App. vol. I at 189 (emphasis added). If the statutory exclusion meant what CE Design says it means— that only violations of the listed statutes qualified for the exclusion—this "action" language would be unneeded and have no place. With this in mind, we have no difficulty concluding that Emcasco did not create a reasonable expectation of coverage that was unsupported by policy language. *Max True Plastering, Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 863 (Okla. 1996).

Custom's faxes might support a claim for conversion but not a TCPA claim. Specifically, it notes that a conversion claim would avoid any need to prove that the fax was an advertisement or that the fax recipient had no business relationship with Custom. Appellant's Rep. Br. at 11. For its ICFA claim, CE Design says that it "also did not arise out of any violation of the TCPA." *Id.* Here, CE Design overlooks two problems. First, as mentioned, its $1,276,000 judgment reflects 2,552 faxes multiplied by $500 (the TCPA penalty for each fax), the basis on which it recommended settlement to the class members. Second, as noted above, its conversion and ICFA claims pleaded the necessary facts to establish a TCPA violation.

Ultimately, we conclude that the policy does not provide coverage for Custom's junk faxes to CE Design and the class members. We have liberally construed the policy to give reasonable effect to its provisions. *See Dodson*, 812 P.2d at 376 (Okla. 1991). We are also mindful that, where a genuine ambiguity exists in an insurance policy, Oklahoma courts will interpret the contract most favorably to the insured. *See Houston Gen. Ins. Co. v. Am. Fence Co., Inc.*, 115 F.3d 805, 806 (10th Cir. 1997). But we find no ambiguity in the policy, and we conclude that the policy excludes Custom's fax from coverage. We also reject CE Design's further argument that Emcasco breached its duty to defend Custom and is now required to indemnify the judgment.

## III. CONCLUSION

We affirm the district court's grant of summary judgment in favor of Emcasco.