**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PATRICE EWING,

    Plaintiff - Appellant,

v.

DOUBLETREE DTWC, LLC, d/b/a Hilton
Salt Lake City Center Hotel,

    Defendant - Appellee.

No. 16-4037
(D.C. No. 2:14-CV-00526-DS)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **BRISCOE**, Circuit Judges.
_____

Plaintiff Patrice Ewing worked as a housekeeper at the Hilton Salt Lake City

Center Hotel, which is operated by Defendant DoubleTree DTWC, LLC, for several

decades until the Hotel's management terminated her in 2011. She now alleges that

her supervisors treated her inappropriately during her time at the Hotel and ultimately

fired her because she has a mental impairment that makes her a "bit slow."

Accordingly, she brings claims against DoubleTree under the Americans with

Disabilities Act ("ADA") for terminating her on the basis of her disability, failing to

accommodate her disability, and subjecting her to a hostile work environment. The

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court granted summary judgment to DoubleTree on all three counts, and Plaintiff appeals. Our jurisdiction arises under 28 U.S.C. § 1291, and we review the district court's decision *de novo*. *Emcasco Ins. Co. v. CE Design, Ltd.*, 784 F.3d 1371, 1378 (10th Cir. 2015).

We assume that Plaintiff's alleged mental disability is protected under the ADA. Even so, Plaintiff must still raise a genuine issue of material fact that her supervisors and the individuals involved in her termination knew about her disability before we can grant her relief for any of her three claims. As the Seventh Circuit aptly recognized, "[t]he ADA does not require clairvoyance." *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995). Thus, when an employer "indisputably had no knowledge of the disability," it "cannot be liable under the ADA." *Id.* at 932; *see also Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 n.9 (10th Cir. 1999) (en banc).

But Plaintiff has presented no admissible evidence suggesting that DoubleTree knew of her mental disability. For starters, she herself admitted during her deposition that she had never told anyone at the Hotel about her disability, a circumstance which her supervisors and the Hotel's management corroborated in their respective testimonies. Plaintiff instead argues that her fellow employees knew about her disability because it was obvious she had one. *See, e.g.*, *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (10th Cir. 2007) (citing *Smith*, 180 F.3d at 1171–72) (explaining that an individual must inform her employer of her disability only when the "individual's disability is not obvious"). For support, she

2

principally relies on two pieces of evidence: (1) the declaration of Jesus Garcia, a security officer at the Hotel who regularly interacted with Plaintiff ("Garcia Declaration"), and (2) the declaration and attached notes of Alaine Cottle, Plaintiff's sister (collectively "Cottle Declaration"). According to the Garcia Declaration, Mr. Garcia "knew[] immediately" that Plaintiff had a mental disability when he first met her, and "[e]veryone at the Hilton knew she had these issues." The Cottle Declaration, in turn, describes various alleged instances in which Plaintiff's supervisors referenced and verbally abused her because of her mental disability (Ms. Cottle claims in her declaration that Plaintiff told her about these instances and that she documented them immediately upon learning about them). The Cottle Declaration also indicates that Plaintiff had an IQ of 51; that she took special education classes during her schooling; and that, at one point, Ms. Cottle referred to herself as an "advocate for the disabled" in an email she sent to one of Plaintiff's supervisors.

The problem for Plaintiff is that the district court ruled the Garcia and Cottle Declarations inadmissible, and Plaintiff does not adequately address this ruling on appeal. Granted, Plaintiff lists one of the issues on appeal as "[w]hether the trial court abused its discretion in dismissing the Declarations of Jesus Garcia and Alaine Cottle." But she then dedicates less than one page to this issue in the "Summary of Argument" section of her brief and then never discusses this issue in the actual "Argument" section. Such a flimsy and deficient legal analysis is inadequate to preserve an issue for appeal: "Where an appellant lists an issue, but does not support

3

the issue with argument, the issue is waived on appeal." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007). Indeed, we encountered an identical situation in *Christian Heritage Academy* and ruled that the appellant waived an issue when it merely identified the issue in its opening brief, devoted less than one page to the issue in the "Introduction to Argument" section, and provided "no other argument and no citations" throughout the remainder of the brief. *Id.* Because "[s]cattered statements in the appellant's brief are not enough to preserve an issue for appeal," *id.* (internal quotation marks omitted), Plaintiff has waived any argument she could have made challenging the district court's decision to exclude the Garcia and Cottle Declarations. She therefore cannot rely on these declarations as evidence to prove that DoubleTree had knowledge of her disability.[1]

Without the Garcia and Cottle Declarations, Plaintiff points to statements from her personal physician in her attempt to prove DoubleTree's knowledge of her disability. For instance, her physician testified that Plaintiff "seemed a bit slow" to him and "didn't always understand the questions" that he and his office staff asked her during her appointments. Her physician also filled out a Mental Capacity Assessment as part of Plaintiff's application for Social Security disability benefits wherein he observed that Plaintiff (1) "[c]an't remember or follow detailed

---

[1] To the extent Plaintiff tries to develop in her reply brief the reasons why the district court erred in excluding the Garcia and Cottle Declarations, her efforts are futile: "[I]ssues raised by an appellant for the first time on appeal in a reply brief are generally deemed waived." *Wheeler v. CIR*, 521 F.3d 1289, 1291 (10th Cir. 2008); *see also Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007) (noting that the Court is not compelled to "pursue late and undeveloped arguments").

4

instructions"; (2) has "[e]xtreme difficulty maintaining attention and concentration for any extended period of time"; (3) is "[e]asily distracted by others"; and (4) has a "[t]ough time with simple questions." But even if all of this is true, this evidence does not indicate that Plaintiff's supervisors or the Hotel's management knew about her mental disability. Indeed, it shows only that her physician, a man who never informed anybody at the Hotel about Plaintiff's medical history prior to litigation and who possesses a certain degree of medical expertise that the average lay person does not possess, suspected that she had a mental disability.

Even more, Plaintiff's disability as described by her physician is not nearly as "obvious" as the disabilities in other cases that she cites for support. For instance, Plaintiff directs us to *Brady v. Wal-Mart Stores, Inc.*, where the Second Circuit ruled that a man with cerebral palsy had a disability that was obvious to his employer when he walked "noticeably slower . . . with a shuffle and limp," spoke "recognizably slower and quieter," avoided "looking directly at people when talking to them," and exhibited "weaker vision" and "a poor sense of direction." 531 F.3d 127, 130 (2d Cir. 2008). But in our case Plaintiff's physician never indicated that Plaintiff exhibited any of these obvious *physical* characteristics. To the contrary, he testified that he "[j]ust got the sense" that Plaintiff took "a little longer to get the information" and even stated that Plaintiff is "by and large . . . not a lot different than other people, other patients." Thus, Plaintiff's manifestations of her disability—such as easily being distracted by others and having extreme difficulty concentrating and paying attention—are not nearly as apparent or indicative of a disability as those in *Brady*.

5

*See Taylor v. Principal Fin. Grp, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) (observing that it "is often the case" that mental disabilities "are not open, obvious, and apparent to the employer").

Plaintiff's inability to prove DoubleTree's knowledge of her mental disability is fatal to all three of her claims under the ADA. First consider Plaintiff's claim for discriminatory termination. Since she has presented only indirect circumstantial evidence that she was fired because of her disability, the familiar *McDonnell Douglas* burden-shifting framework governs this claim. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). This framework involves three distinct steps:

> (1) the plaintiff must establish a prima facie case of discrimination . . . ; (2) the defendant employer must offer a legitimate non-discriminatory reason for the adverse employment action; and (3) the plaintiff must show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual.

*Smothers*, 740 F.3d at 538. To establish the first *McDonnell Douglas* element—a prima facie case—Plaintiff must present evidence that "(1) [she] is disabled within the meaning of the ADA; (2) [she] is qualified to perform the essential functions of [her] job with or without accommodations; and (3) [she] was terminated 'under circumstances which give rise to an inference that the termination was based on [her] disability.'" *Id.* at 544 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). Clearly, if DoubleTree had no knowledge of her mental disability, Plaintiff cannot establish that her termination arose under circumstances which would give rise to an inference that it was based on her disability. Therefore, her ADA claim for

6

discriminatory termination must necessarily fail.

Similarly, Plaintiff's failure to accommodate claim under the ADA necessarily fails, for an employer "must have knowledge that the individual is disabled" before it "can be held liable under the ADA for failing to provide a reasonable accommodation." *Robertson*, 500 F.3d at 1196 (citing *Smith*, 180 F.3d at 1171–72). Further, Plaintiff's hostile work environment claim under the ADA requires her "to present evidence from which a rational jury could find that her workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the terms, conditions, or privileges of employment, *and the harassment stemmed from disability-related animus*." *Schlecht v. Lockheed Martin Corp.*, 626 F. App'x 775, 779 (10th Cir. 2015) (unpublished) (emphasis added) (citing *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005)); *see also Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 (10th Cir. 1997). If DoubleTree had no knowledge of Plaintiff's disability, then any harassment Plaintiff experienced could not have stemmed from disability-related animus.

But even if DoubleTree did have knowledge of Plaintiff's mental disability, Plaintiff's three ADA claims all fail for other reasons. Again, first consider her ADA claim for discriminatory termination. Even if Plaintiff could make out a prima facie case of discrimination under the *McDonnell Douglas* framework, she must still raise a genuine factual dispute that DoubleTree's legitimate, non-discriminatory reason for her termination—poor work performance—is pretextual. And to establish pretext, Plaintiff must show that DoubleTree's "proffered non-discriminatory explanations for

7

its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief." *Bird v. West Valley City*, 832 F.3d 1188, 1201 (10th Cir. 2016) (alteration in original) (internal quotation marks omitted).

Plaintiff, however, cannot meet this requirement. Most damning is that she herself admitted that her performance at work was poor and that she had trouble meeting expectations. Even more, the arguments Plaintiff utilizes in her attempt to establish pretext are flawed and unconvincing. For instance, Plaintiff points to language in a decision from the Utah Department of Workforce Services ("Agency") wherein the Agency decided that Plaintiff was entitled to unemployment compensation after she was fired. In relevant part, the agency noted that Plaintiff's supervisors became aware of her deficient work performance "three years before she was discharged" and that since "the discharge did not occur immediately after [DoubleTree] became aware of the problem, there may have been other reasons for the job separation." Plaintiff contends that this statement alone can show pretext.

But the Agency set out to determine only whether Plaintiff was entitled to unemployment benefits, not whether DoubleTree engaged in any misconduct. Indeed, the Agency determined that there may have been "other reasons" for Plaintiff's termination only because it relied on a Utah administrative regulation for unemployment benefits that states "a *presumption arises* that there were other reasons for the discharge" "[i]f the discharge did not occur immediately after the employer became aware of an offense." Utah Admin. Code r. 994-405-206(2)

8

(emphasis added). This regulation does not govern and this presumption does not arise when we must discern whether an employer's reasons for an employee's termination are pretextual under the ADA. *See Bird*, 832 F.3d at 1204 ("[E]ven though the timing leading up to an employee's termination is *evidence* of pretext, it is not sufficient standing alone to *establish* pretext." (emphases in original) (citation omitted)). And in any event, no reasonable juror could conclude in the specific context of this case that DoubleTree's non-discriminatory reason for Plaintiff's termination is unworthy of belief simply because DoubleTree had observed Plaintiff's performance issues for three years prior to her discharge. Over these three years, DoubleTree meticulously followed company policy by progressively disciplining Plaintiff in the form of multiple verbal and written warnings. And given that Plaintiff had worked at the Hotel for several decades, it is exceedingly clear that DoubleTree issued these warnings for such an extended period of time because it wanted to honor Plaintiff's tenure at the Hotel and give her a chance to correct her deficient performance.

The only other potential evidence of pretext that Plaintiff points to either stems from the Garcia and Cottle Declarations or is based on her own vague and conclusory allegations (e.g., that she was "reprimanded and yelled at in front of other employees and how embarrassing it is"). But as we have previously noted, we will not review the district court's ruling that the Garcia and Cottle Declarations are inadmissible. Further, "conclusory statements unsupported by any examples" do not suffice to create a genuine issue of material fact. *Bird*, 832 F.3d at 1206. Thus, Plaintiff's

9

ADA claim for discriminatory termination also fails because she cannot establish that her termination for poor work performance was pretextual.

Plaintiff's failure to accommodate claim under the ADA also fails even if DoubleTree had knowledge of Plaintiff's mental disability, for an employer "must *also* have knowledge that an individual requires an accommodation of some kind." *Robertson*, 500 F.3d at 1197 (emphasis added); *see also EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011) ("[T]he employer must know of both the disability and the employee's desire for accommodations for that disability." (internal quotation marks omitted)). Generally, this means that "the employee must make an adequate request" for an accommodation, *C.R. England, Inc.*, 644 F.3d at 1049, but Plaintiff herself never indicated to DoubleTree in any way that she required an accommodation.

Nonetheless, Plaintiff contends that at least two other people made requests for an accommodation on her behalf. First, she claims that Mr. Garcia informed the Hotel's Human Resources Department that her supervisors were harassing her because of her disability. Even if we generously assume that this statement qualifies as a request for an accommodation, Plaintiff pulls this evidence from the Garcia Declaration, which we will not consider. Second, Plaintiff argues that her counsel sent a letter to DoubleTree wherein he asked it to make a reasonable accommodation for Plaintiff. But her counsel wrote this letter only to dispute a disciplinary action to which Plaintiff was subjected, and nowhere in this letter did he ever mention or allude to the fact that Plaintiff had a disability. As such, any potential requests for

accommodations in the letter were not related to Plaintiff's disability. *See C.R. England, Inc.*, 644 F.3d at 1049 ("Although the notice or request does not have to . . . formally invoke the magic words 'reasonable accommodation,' it nonetheless must make clear that the employee wants assistance *for his or her disability*." (emphasis in original) (internal quotation marks omitted)).

Further, although there may be "certain instances" where an employer "will know of the individual's need for an accommodation because it is 'obvious,'" *Robertson*, 500 F.3d at 1197, this is not such a case. Again, assuming that Plaintiff's supervisors and the Hotel's management knew of her *disability*, this does not mean that they knew she required an *accommodation* of any sort. This is especially true given that (1) her own physician testified that Plaintiff is "by and large . . . not a lot different than other people, other patients," and (2) to this day Plaintiff herself has not identified what accommodation she would have needed. As such, Plaintiff's ADA claim for failure to accommodate must also fail because DoubleTree never knew that she needed an accommodation.

Finally, Plaintiff's ADA hostile work environment claim fails even if DoubleTree knew that she had a mental disability. Plaintiff primarily points to the Cottle Declaration for evidence that she was subjected to disability-based abuse, but, once again, we will not consider this evidence. And without the Cottle Declaration, Plaintiff describes only one non-conclusory instance of alleged abuse. This single instance occurred when one of her supervisors stated, "[Plaintiff], you like Russell"—another employee at the Hotel who had a mental disability and "always

11

talk[ed] to himself out loud—which Plaintiff felt was "rude." Setting aside the ambiguous nature of her supervisor's comment—was her supervisor comparing Plaintiff to Russell or merely insinuating that Plaintiff admired or was smitten with Russell?—we have previously held that "a few isolated incidents" of workplace abuse are insufficient grounds on which to sustain a hostile work environment claim. *Bird*, 832 F.3d at 1205 (internal quotation marks omitted). Thus, this (potential) single instance of disability-based animosity toward Plaintiff does not indicate that Plaintiff experienced harassment so severe or pervasive as to alter the terms and conditions of her employment. Consequently, her ADA claim for hostile work environment also fails for this reason.

*** 

For the reasons described above, Plaintiff's ADA discriminatory termination claim, failure to accommodate claim, and hostile work environment claim must fail. The district court's decision granting summary judgment to DoubleTree on all three claims is therefore

AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

12